# IN UNITED STATES DISTRICT COURT
# FOR NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DAEJA SUTTON,** Individually and On Behalf of All Others Similarly Situated, | Case No.: 1:20-cv-04902 |
| Plaintiffs, | CLASS ACTION COMPLAINT |
| v. | (1) ILLINOIS CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT, ("ICFA") 815 ILCS §§ 505/1, *ET SEQ.*; |
| **ROOSEVELT UNIVERSITY,** | |
| Defendant. | (2) CONVERSION; AND, |
| | (3) UNJUST ENRICHMENT. |
| | JURY TRIAL DEMANDED |

## INTRODUCTION

1. This action arises out of the current COVID-19 global pandemic which has resulted in the suspension of in-person educational services across the country.

2. The Center for Disease Control and Prevention ("CDC") has classified COVID-19 as a serious threat to the health and safety of the public, and the World Health Organization declared the COVID-19 outbreak to be a pandemic.

3. Plaintiff DAEJA SUTTON ("Ms. Sutton," or "Plaintiff"), individually and on behalf of all others similarly situated, brings this action for damages, and any other available legal or equitable remedies, resulting from the unlawful practices and conduct of defendant Roosevelt University ("RU" or "Defendant") in violation of: (1) The Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 Ill. Comp. Stat. §§ 505/1, *et seq.*; and for (2) Conversion, and (3) Unjust Enrichment.

4. Specifically, Plaintiff brings this complaint for damages arising out of Defendant's conduct of improperly and unfairly refusing to refund students' tuition for in-person education and on-campus amenities following Defendant's decision to suspend all in-person classes.

5. By doing so, Defendant has engaged in unfair and inequitable conduct by failing to refund students who did not receive the in-person educational experience that they paid for as a result of Defendant's decision to effectively close its campuses and switch to online only educational instruction.

6. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

7. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

**JURISDICTION AND VENUE**

8. Jurisdiction is proper under 28 U.S.C. § 1332(d) ("CAFA"), which provides for original jurisdiction of the federal courts of any class action in which any member of the class is a citizen of a state different from the defendant, and in which the matter in controversy exceed, in the aggregate, the sum of $5,000,000, exclusive of interest and costs.

9. Upon information and belief, many members of the proposed Class are residents of states other than Illinois.

10. Upon information and belief, the total claims of individual members in this action are in excess of $5,000,000, where Plaintiff seeks a refund of tuition and other related fees, which, when aggregated among the proposed class in the thousands, exceeds the $5,000,000 threshold.

11. Upon information and belief Defendant is a Illinois corporation.

12. This Court has general and specific personal jurisdiction over Defendant because Defendant conducts business in the County of Cook, State of Illinois; and, upon information and belief Defendant's main office is located at 430 S. Michigan Ave, Chicago, Illinois 60605.

13. Venue is proper in the United States District Court for the Northern District of Illinois pursuant to 18 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred within this judicial district and the Defendant conducts substantial business within this judicial district.

## PARTIES

14. Plaintiff is a resident of the County of Ward, State of North Dakota.

15. Upon information and belief, Plaintiff alleges that Defendant is a is a corporation whose state of incorporation is Illinois and principal place of business is in Chicago, Illinois.

16. Upon information and belief, Plaintiff further alleges that Defendant operates an undergraduate and graduate university offering a range of academic programs, including associate degrees and doctoral degrees, in an interactive learning environment.[1]

17. Plaintiff alleges that at all times relevant herein, Defendant conducted business in the State of Illinois, in the County of Cook, and within this judicial district.

## FACTUAL ALLEGATIONS

18. Sometime prior to August 2019, Plaintiff enrolled in RU's undergraduate program at the RU Chicago campus in order to obtain a Bachelors of Arts in Psychology.

---

[1] Roosevelt University, *Our Mission,* https://www.roosevelt.edu/about/our-story (last visited August 4, 2020).

19. Plaintiff is an on-campus undergraduate student at RU, and Plaintiff paid tuition and fees to Defendant for the Spring 2020 semester.

20. Plaintiff paid to attend in-person classes at RU and live on campus for approximately 17 weeks from January 2020 until May 2020. Plaintiff's Spring 2020 semester courses began on or around January 22, 2020.

21. Part of Plaintiff's Spring 2020 semester tuition payments to Defendant included several on-campus amenities and services, including but not limited to Plaintiff's access to RU's fitness and recreational centers, as well as the overall educational benefits associated with an in-person, interactive learning experience.

22. In total, Defendant's tuition for one semester costs over $15,000. A portion of Plaintiff's tuition was paid for by state and federal grants.

23. Plaintiff also paid Defendant over $4,800 for housing and nearly $2,000 for her on-campus meal plan for the Spring 2020 semester.

24. Plaintiff paid for and expected to receive the full on-campus educational experience, including in-person instruction, access to campus facilities such as the fitness and recreational center, and other student activities.

25. In recruiting students, RU markets many benefits associated with the on-campus educational experience that cannot be realized when RU only offers online, remote instruction away from its campus.

26. For example, Defendant represents on its website that while enrolled in RU's Psychology Program, "[s]tudents have opportunities to participate in faculty members' research

teams."[2] RU also notes on its website that, "[t]he hallmarks of the Roosevelt University experience are strong student-faculty interaction and engagement with metropolitan Chicago as both a laboratory for learning and as an expression of its commitment to social justice."[3]

27.     The main reason that Plaintiff decided to pay for Defendant's educational services was due to Defendant's representations that Plaintiff would receive a hands-on learning experience, inclusive of in-person study and access to campus facilities such as the fitness and recreational center.

28.     Defendant represents to students on its website that, "Roosevelt's 11:1 faculty to student ratio means smaller classes and closer connections with your professors."[4]

29.     A substantial part of the of value Defendant's educational services to Plaintiff was that Plaintiff was to be provided with an interactive learning environment, which is essential for a degree such as Psychology requiring practical in-person learning and observation.

30.     Plaintiff also valued that RU was to provide Plaintiff with an intimate, in-person learning experience, with small class sizes to facilitate a productive learning environment.

31.     In early March of 2020, many states across the United States proclaimed a State of Emergency as a result of the health and safety threats created by COVID-19.

32.     On or about March 9, 2020, Plaintiff attended her last day of in-person instruction for the Spring 2020 semester, as Defendant ceased in-person instruction. Following this date,

---

[2] Roosevelt University, *Bachelor's in Psychology (BA), What Differentiates Us*, https://www.roosevelt.edu/academics/programs/bachelors-in-psychology-ba#pnlRequirementsSection (last visited August 5, 2020).
[3] *Id*.
[4] Roosevelt University, *Why Roosevelt*, https://www.roosevelt.edu/about/why-roosevelt (last visited August 4, 2020).

Plaintiff was forced to move out of Defendant's on-campus student housing and attend classes online.

33. As of March 20, 2020, nearly all of Defendant's academic activities moved to an online only format.

34. In addition, Defendant's fitness and recreational centers have been closed since on or around March 13, 2020.

35. On March 31, 2020, RU's President, Ali R. Malekzadeh, Ph.D., commented on Defendant's "first week of online delivery and remote working."[5] Dr. Malekzadeh notes in his March 31, 2020 letter to Faculty and Staff that the switch to an online educational format was "not easy for anyone" and that "[w]orking remotely to do your job and give instruction online is very challenging . . ."

36. Thus, even though Plaintiff paid Defendant for the full on-campus educational experience, which included Plaintiff's ability to use the fitness and recreational center, for the entire Spring 2020 semester, Plaintiff has received an educational experience of a significantly diminished value and paid for services not actually provided by Defendant.

37. To date, for its own economic enrichment, Defendant refuses to provide Plaintiff with a full refund for the diminished value of Plaintiff's educational services.

38. After repeated requests for a refund, Defendant merely offered Plaintiff $400 for a portion of Plaintiff's unused meal plan.

---

[5] *See* Roosevelt University, *President Ali's Message to Faculty and Staff*, (March 31, 2020 at 10:28 am) https://blogs.roosevelt.edu/coronavirus/2020/03/31/president-alis-message-to-faculty-and-staff/.

39. Had Plaintiff been aware that Defendant would cease providing in-person education and access to other on-campus amenities such as the fitness and recreational center, Plaintiff would not have decided to pay for Defendant's educational services.

40. In other words, Plaintiff would not have agreed to pay for a more expensive tuition rate that was to include in-person hands on training and on-campus amenities where Plaintiff would not be provided with these services.

41. As a result of Defendant's unfair and inequitable business practices, Plaintiff and others similarly situated consumers paid Defendant tuition and other fees or expenses, and have suffered, and continue to suffer, injury in fact through the loss of money and/or property.

42. This action seeks, among other things, damages as a result of the misconduct alleged herein.

## CLASS ACTION ALLEGATIONS

43. Plaintiff brings this action on behalf of Plaintiff and all others similarly situated (the "Class").

44. Plaintiff represents, and is a member of, the Class, pursuant to Fed. R. Civ. P. 23(b)(2) and/or (b)(3), which is defined as follows:

> All persons in the United States who paid Defendant tuition for in-person educational services for the Spring 2020 semester.

45. Excluded from the Class are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.

46. Plaintiff reserves the right to redefine the Class, including but not limited to expanding the class definition and adding one or more subclasses as appropriate based on discovery and specific theories of liability.

47. The Class that Plaintiff seeks to represent contains numerous members and is clearly ascertainable including, without limitation, by using Defendant's records to determine the size of the Class and to determine the identities of individual Class members.

**Numerosity**

48. The Class members are so numerous that joinder of all members would be unfeasible and impractical. The membership of the Class is currently unknown to Plaintiff at this time. However, on information and belief, Defendant currently has thousands of students who paid tuition for in-person education during the applicable period. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

**Commonality**

49. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. Those common questions of law and fact include, without limitation, the following:

- Whether there is a difference in value between receiving online only classes and an in-person, on campus experience;
- Whether Defendant actually ceased providing in-person classes and access to other on campus facilities;
- Whether Defendant's conduct is an unfair or deceptive within the meaning of 815 Ill. Comp. Stat. §§ 505/1 *et seq*.
- Whether Defendant was unjustly enriched;
- Whether Defendant, through its conduct, received money that, in equity and good conscience, belongs to the Plaintiff and members of the Class.

### Typicality

50. Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom they are similarly situated, and Plaintiff's claims (or defenses, if any) are typical of all Class members' as demonstrated herein.

51. Plaintiff represents and is a Class member of the Class because Plaintiff paid Defendant money for in-person education and access to on-campus facilities where Defendant represented that these academic services were to be provided. Despite Defendant's representations, Defendant did not provide these services, yet Plaintiff was not refunded monies following cessation of in-person instruction due to the pandemic. Consequently, the claims of Plaintiff are typical of the claims of Class members and Plaintiff's interests are consistent with and not antagonistic to those of the other Class members whom Plaintiff seeks to represent.

52. Plaintiff and all members of the Class have been impacted by, and face continuing harm arising out of, Defendant's violations or misconduct as alleged herein.

### Adequacy

53. Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom Plaintiff is similarly situated, as demonstrated herein. Plaintiff acknowledges that Plaintiff has an obligation to make known to the Court any relationship, conflicts, or differences with any Class member. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling claims involving consumer actions and violations of the causes of action asserted. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class

member. Neither Plaintiff nor Plaintiff's counsel have any interests adverse to those of the other Class members.

**Predominance**

54. Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members of the class. The elements of the legal claims brought by Plaintiff and members of the Class and Subclass are capable of proof at trial through evidence that is common to the class rather than individual to its members.

**Superiority**

55. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Even if every individual Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts if individual litigation of the numerous cases were to be required.

56. Individualized litigation also would present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, conducting this action as a class action will present fewer management difficulties, conserve the resources of the parties and the court system, and protect the rights of each Class member. Further, it will prevent the very real harm that would be suffered by numerous Class members who will be unable to enforce individual claims of this size on their own, and by Defendant's competitors, who will be placed at a competitive disadvantage because they chose to obey the law. Plaintiff anticipates no difficulty in the management of this case as a class action.

57. The prosecution of separate actions by individual Class members may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to those adjudications, or that would otherwise substantially impair or impede the ability of those non-party Class members to protect their interests.

58. The prosecution of individual actions by Class members would establish inconsistent standards of conduct for Defendant.

59. The Class may also be certified because:

    (a) the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendants; and,

    (b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

    (c) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

60. This is expressly is not intended to request any recovery for personal injury and claims related thereto.

# FIRST CAUSE OF ACTION
# ILLINOIS CONSUMER FRAUD AND
# DECEPTIVE BUSINESS PRACTICES ACT ("ICFA")
# 815 ILL. COMP. STAT. §§ 505/1, *et seq.*,

61. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

62. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat §§ 505/1, *et seq.*, provides protection to consumers by mandating fair competition in commercial markets for goods and services.

63. The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business act or practice including through the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("IDTPA").

64. Specifically, the ICFA "is a regulatory and remedial statute intended to protect consumers . . . against fraud, unfair methods of competition, and other unfair and deceptive practices." *Siegel v. Shell Oil Co.,* 612 F.3d 932, 934 (7th Cir. 2010) (quoting *Robinson v. Toyota Motor Credit Corp.,* 201 Ill.2d 403, 416 (Ill. 2002)). Therefore, the statue is to be liberally construed to effectuate this purpose.

65. The ICFA applies to Defendant's conduct described herein because it applies to transactions involving the sale of good or services to consumers.

66. Defendant is a "person" as defined by 815 Ill. Comp. Stat. § 505/1(c).

67. Plaintiff and each member of the Class are "consumers" as defined by 815 Ill. Comp. Stat. § 505/1(e).

68. Defendant's educational services constitute "services" under the meaning of 815 Ill. Comp. Stat. § 505/1(b) and its sale is within the meaning of "trade" or "commerce" under the ICFA.

69. By and through Defendant's conduct alleged in further detail above and herein, Defendant engaged in conduct that constitutes unfair business practices prohibited by 815 Ill. Comp. Stat §§ 505/1, *et seq.*,

70. Specifically, Defendant's actions and representations constitute an "unfair" business act or practice under 815 Ill. Comp. Stat §§ 505/1, *et seq*. in that Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. Without limitation, it is an unfair business act or practice for Defendant to knowingly or negligently represent to consumers that in-person education, in-person training, hands-on learning experiences, and access to on-campus facilities were to be provided to students and then fail to provide these services, without providing any refund or credit for tuition and/or related fees.

71. Such conduct by Defendant is "unfair" because it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers in that consumers are led to believe that Defendant is providing a service and/or benefit to consumers when it is not.

72. Plaintiff could not have reasonably avoided the injury suffered. Indeed, Plaintiff urgently contacted Defendant requesting a pro-rated refund for tuition and related fees without success.

73. The facts concealed or not disclosed by Defendant to Plaintiff and the Class, including that its in-person educational programs would be primarily online and not come with

in-person education, training, and practical learning, and that access to the on-campus fitness center would not be provided, are material in that a reasonable consumer would have considered them to be important in deciding whether or not to pay to attend such school.

74. Specifically, Defendant's indication that in-person education and related services were to be provided is a material misrepresentation because Plaintiff and members of the Class are essentially prohibited from coming onto Defendant's campus, and, Plaintiff and Class members are denied the benefits associated with in-person education, in-person instruction, access to campus facilities, and other student activities.

75. Plaintiff and members of the Class reasonably relied upon Defendant's representations regarding Defendant's educational offerings, and Plaintiff and members of the Class reasonably expected that their school tuition and fees included in-person education, including access to in-person instruction, campus facilities, and other student activities.

76. Through the omissions detailed herein, Defendant wrongfully induced Plaintiff and the other members of the Class to pay Defendant tuition when they otherwise would not have paid it if they knew the Class would be primarily online and in-person education would not be provided.

77. As a result of Defendant's conduct, Plaintiff and members of the Class suffered actual damages in the form of tuition money and related fees paid to Defendant for services that were not provided.

78. Such damages were proximately caused by Defendant's representations that in-person education and access to on campus facilities were to be provided for the entire Spring 2020 semester, when in fact, those services were not provided to Plaintiff and members of the Class.

79. Plaintiff reserves the right to allege further conduct that constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date, as Defendant continues to refuse to provide students with tuition refunds.

80. 815 Ill. Comp. Stat § 505/10a states:

> (a) Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper...
>
> (c) [T]he Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party.

81. In taking the actions and omissions set forth above, and making the false promises, misrepresentations, concealments, suppressions, and omissions of material facts set forth above, Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act, including, but not limited to 815 Ill. Comp. Stat § 505/2.

82. By reason thereof, Plaintiff and members of the Class are entitled to a judgment against Defendant, declaring that Defendant's conduct violated 815 Ill. Comp. Stat § 505/2, enjoining Defendant from engaging in similar conduct in the future, and awarding actual damages, punitive damages, injunctive relief, costs and attorneys' fees.

## SECOND CAUSE OF ACTION
## CONVERSION

83. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

84. At all times relevant hereto, Defendant wrongfully exercised control over Plaintiff's and the Class member's personal property in the form of school tuition and related fees.

85. Plaintiff and members of the Class possessed money which was paid to Defendant, in a fixed and identifiable sum, in exchange for certain services.

86. Specifically, Plaintiff and members of the Class paid Defendant tuition money and related fees in exchange for in-person education and access to on-campus facilities such as the fitness and recreational center.

87. Plaintiff and the Class have a right to the in-person instruction and on-campus services, which Defendant was to provide in exchange for payments of tuition and fees to Defendant.

88. Defendant intentionally failed to provide Plaintiff and members of the Class with in-person education and access to the fitness and recreational center thereby intentionally and substantially interfering with Plaintiff's and Class members' property by taking possession of their funds, preventing Plaintiff and members of the Class from having access to the to their funds, and refusing to return the funds to Plaintiff and members of the Class after it was demanded to be returned or refunded.

89. Upon information and belief, Defendant willfully took advantage of the pandemic to enrich itself economically at the expense of Plaintiff and the members of the Class, in conscious disregard for the rights of Plaintiff and the Class members to their monies.

90. Defendant's retention of the tuition and fees paid by Plaintiff and members of the Class without providing the in-person instruction, on-campus services, and access to on-campus facilities, during the Spring 2020 semester for which they paid deprived Plaintiff and the Class of the benefits for which the fees were paid. This interference with the services for which Plaintiff and the other members of the Class paid damaged Plaintiff and the Class in that they paid fees for services that were not and will not be provided.

91. Plaintiff and members of the Class are entitled to, and seek, the return of prorated portion of their tuition and fees paid for the Spring 2020 semester.

## THIRD CAUSE OF ACTION
## UNJUST ENRICHMENT

92. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

93. To state a claim for unjust enrichment, the Illinois Supreme Court has held that "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc*., 131 Ill. 2d 145, 160 (1989).

94. Plaintiff and members of the Class conferred non-gratuitous benefits upon Defendant by paying Defendant tuition and related fees, thereby significantly increasing Defendant's revenue and profits, thereby unjustly enriching Defendant at the expense of and to the detriment of Plaintiff and the Class members.

95. Defendant's retention of any benefit collected from Plaintiff's and the Class' tuition payments to Defendant, either directly or indirectly, violated principles of justice, equity, and good conscience. Thus, Defendant has been unjustly enriched and Plaintiff and the Class members are entitled to recover from Defendant all amounts that Defendant has wrongfully and improperly obtained.

96. As a result of Defendant's unlawful practices, Plaintiff and the Class members have suffered concrete harm and injury. Plaintiff and the Class members are therefore entitled to seek disgorgement and restitution of wrongful profits, revenue, and benefits conferred upon Defendant in a manner established by this Court.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and members of the Class, prays for the following relief:

- That this action be certified as a Class Action, establishing the Class, any additional sub-classes that the Court may deem appropriate;
- Appointing Plaintiff as the representative of the Class;
- Appointing the law firms representing Plaintiff as Class Counsel;
- An Order enjoining Defendant from continuing the wrongful conduct alleged herein and be required to comply with all applicable laws;
- Injunctive relief pursuant to 815 Ill. Comp. Stat § 505/10a;
- Actual damages;
- Punitive damages;
- Compensatory damages;
- Restitution;
- Costs of suit;
- An award of reasonable attorneys' fees for Plaintiff and the Class pursuant to 815 Ill. Comp. Stat § 505/10a and/or any other applicable law;
- Any and all other relief as this Court may deem necessary or appropriate.

## JURY DEMAND

97. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: August 20, 2020

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: /s/ Abbas Kazerounian
ABBAS KAZEROUNIAN, ESQ.
(IL SBN 6316129)
ak@kazlg.com
245 Fischer Ave., Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
ATTORNEY FOR PLAINTIFF

**Additional Plaintiff's Counsel**

**KAZEROUNI LAW GROUP, APC**
Jason A. Ibey, Esq. (*pro hac vice forthcoming*)
jason@kazlg.com
321 N Mall Drive, Suite R108
St. George, Utah 84790
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
Todd M. Friedman (IL SBN 6276496)
tfriedman@ toddflaw.com
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367
Telephone: (877) 206-4741
Facsimile: (866) 633-0228